UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                  Case No. 23-20654

v.                                           Honorable Nancy G. Edmunds

JAMEEL ANTHONY DION TANZIL,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [22]**

Defendant Jameel Anthony Dion Tanzil is indicted in this matter with one count of felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 14.) Before the Court is Defendant's motion to suppress evidence, challenging the constitutionality of the warrantless search and seizure of his phone. (ECF No. 22.) The government opposes the motion. (ECF No. 28.) Defendant has filed a reply. (ECF No. 31.) The Court held an evidentiary hearing on July 30, 2024. For the reasons below, the Court DENIES Defendant's motion.

**I.    Background**

During the hearing, the Court heard detailed testimony from ATF Special Agent Brett Brandon. The Court found Agent Brandon credible and fully credits the testimony he provided. The following summary of the facts is supported by that testimony.

On October 28, 2023, a shooting took place in Pontiac, Michigan, leading to the death of a sixteen-year-old female. The next day, as part of the homicide investigation, police searched the address where the shooting took place. During the search, police detained four minor children, including Defendant's six-year-old son. There were no

1

adults in the house at the time. The children indicated that Defendant and another individual, K.L., were on the scene before the shooting. Police also overheard a phone call where one of the juveniles indicated that K.L. and "them" were shooting. During the search of the house, police found two firearms. Witnesses told police that K.L. lived at the address with his girlfriend and several children. Witnesses also indicated that the two people involved in the shooting left the house in a SUV afterwards.

Police requested both historical and active GPS ping data for both K.L.'s phone and Defendant's phone. Police learned that both phones were in the area of the homicide at the time of the shooting. Both phones left Pontiac immediately after the shooting, traveled to Detroit, and then returned to Pontiac. Even though Defendant's phone was off for much of the following days, police learned that the phone was in the area of the Red Roof Inn located in Orion Township during the morning of October 30, 2023. Police went to that location and located surveillance video of Defendant leaving the hotel in a silver Ford Edge. Using a license plate reader camera, police determined that the vehicle was located at the Newman apartment complex. Police went there to search for Defendant.

When police saw the Ford Edge, there were two people in the vehicle. But when police initiated a traffic stop a few minutes later, the driver was the only person. Police had previously interviewed the driver, and she had provided false information about Defendant and his whereabouts. Police used apartment surveillance video to determine that Defendant went into a home on Newman Lane. When police went to that home, an individual, J.H., initially told police that Defendant was not there. Moments later, Defendant came downstairs and surrendered. Defendant was searched incident to the arrest. He did not have his cellular phone on his person.

2

Agent Brandon knew that Defendant had his phone with him throughout the day due to the GPS data that correctly revealed Defendant was at the Red Roof Inn and then traveled to Pontiac. Police patted Defendant down and asked him where his phone was. He said he did not have his phone on him. Police asked Defendant if he left his phone upstairs, and Defendant said he had not. J.H. gave police permission to check upstairs for the phone. Police found four phones upstairs but people in the apartment claimed each of those phones. Agent Brandon asked J.H.'s son, J.D., where Defendant's phone was and J.D. said, "probably downstairs." There were several other phones in the apartment that were also claimed by occupants of the apartment.

Police found a blue iPhone on the counter in the kitchen. The phone was turned off at the time. Nobody in the apartment indicated that the phone was theirs. Police turned the phone on and called Defendant's number. When they did, the phone rang. Agent Brandon answered the phone, confirming that the phone belonged to Defendant. Agent Brandon then seized the phone and placed it in airplane mode to avoid a remote-wipe attempt. The following day, police obtained a state warrant to search the phone and about ten days later, ATF obtained a federal warrant to search the phone.

## II.   Analysis

Defendant argues that every action the officers took regarding his phone—picking it up, turning it on, and seizing it—required a search warrant. The government argues that exigent circumstances justified these actions.[1]

---

[1] The government avers that powering on Defendant's phone was not a search but argues that the Court need not reach this issue because the officers' actions were justified. The Court will assume without deciding that there was a search of the phone.

"If 'law enforcement authorities have probable cause to believe that a container holds evidence of a crime' and the 'exigencies of the circumstances demand it,' seizure of the container 'pending issuance of a warrant to examine the contents' is permitted." *United States v. Williams*, 998 F.3d 716, 738 (6th Cir. 2021) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)); *see also Roaden v. Kentucky*, 413 U.S. 496, 505 (1973) ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation"). When making a determination regarding exigent circumstances, courts "consider the totality of the circumstances and the inherent necessities of the situation." *Williams*, 998 F.3d at 739 (quotation marks and citation omitted). "The inquiry focuses not on an officer's subjective intentions, but on whether an objectively reasonable officer could have believed that exigent circumstances existed." *Id.*

The government argues that officers had probable cause to believe that the phone would contain evidence of the homicide and an objective and reasonable belief that if they did not seize the phone, evidence would be destroyed. Defendant argues that it was not a "now or never" situation, but the Supreme Court has specifically given "circumstances suggesting that a defendant's phone will be the target of an imminent remote-wipe attempt" as an example of a situation where officers may be able to rely on exigent circumstances to search a phone immediately. *See Riley v. California*, 573 U.S. 373, 391 (2014). Here, Defendant was under investigation for possible involvement in a very serious crime—the murder of a teenage girl—and Agent Brandon's concern that someone would conduct a remote-wipe attempt on behalf of Defendant was reasonable. Defendant appeared to have been avoiding detection by police for several days and his phone had

4

been powered off for much of that time. His girlfriend had told law enforcement that she did not know where Defendant was, but the Red Roof Inn room was booked under her name. And the search and seizure were limited in scope to confirming that the phone belonged to Defendant and seizing it until a warrant for its contents could be obtained.

In sum, the limited search and subsequent seizure of the phone were justified in this case under the exigent circumstances doctrine.[2]

### III.   Conclusion

For the reasons above, Defendant's motion to suppress evidence is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 17, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2024, by electronic and/or ordinary mail.

s/Marlena A. Williams
Case Manager

---

[2] During the hearing, the government also invoked the plain view doctrine. Under this doctrine, incriminating evidence may be seized when "(1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed, (2) the item is in plain view, and (3) the incriminating character of the evidence is immediately apparent." *See United States v. Taylor*, 248 F.3d 506, 512 (6th Cir. 2001) (citation omitted). Here, officers searched the home after obtaining consent from the owner, the phone was laying on a kitchen counter in plain view, and the incriminating character of the phone was apparent to officers who were on the lookout for Defendant's phone after all the other phones found in the home were claimed by other individuals. Thus, the seizure of the phone was also permissible under the plain view doctrine.