UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMEEL ANTHONY DION TANZIL,

    Defendant.

Case No. 23-20654

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [24]**

Defendant Jameel Anthony Dion Tanzil is indicted in this matter with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 14.) Before the Court is Defendant's motion to dismiss the indictment. (ECF No. 24.) Defendant argues that § 922(g)(1) is unconstitutional on its face and as applied to him under the framework set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The government opposes the motion. (ECF No. 26.) The Court initially held the motion in abeyance pending a ruling on the constitutionality of § 922(g)(1) from the Sixth Circuit Court of Appeals. After the issuance of *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), the parties filed supplemental briefs, (ECF Nos. 37, 42, 44), and the Court held a hearing.[1] For the reasons below, the Court DENIES Defendant's motion.

**I.    Legal Framework**

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right." This right protects

---

[1] The Court also heard two motions to suppress on that same day. Those motions will be addressed in a future opinion and order.

1

the ability to keep, for "lawful purposes," the kinds of weapons in common use, like those used for self-defense. *Id.* at 624-25. Following *Heller*, courts of appeals developed a two-step means-end test when considering the constitutionality of firearm regulations. *See Bruen*, 597 U.S. at 18. Under that test, courts would ask whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *See id.* If the answer is yes or is unclear, the second step would to be to apply the appropriate level of scrutiny to assess the strength of the government's justification for regulating the exercise of the right. *Id.* at 18-19.

In *Bruen*, the Supreme Court rejected the means-end framework, stating that it involved "one step too many," and set forth a new text-and-history test. *Id.* at 19. Under this test, courts must first ask whether the plain text of the Second Amendment covers an individual's conduct—in other words, whether the individual is among "the people" as used in the Second Amendment. *Id.* at 24, 31-32. If the answer to that question is yes, "the Constitution presumptively protects that conduct" and the regulation is not constitutional simply because it promotes an important interest. *Id.* at 17. Instead, the government must affirmatively prove "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Even though *Bruen* overturned the framework courts had developed based on *Heller*, some courts continued to reject as-applied constitutional challenges to § 922(g)(1) by relying on the dicta in *Heller*, 554 U.S. at 626, stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *See, e.g.*, *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). The Sixth Circuit, however, recently disagreed, finding that it must abide by "*Bruen*'s mandate to

2

consult historical analogs." See Williams, 113 F.4th at 648. After applying the text-and-history test, the court concluded "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." See id. at 662-63. In an as-applied challenge, the burden rests on the defendant to show that he is not dangerous. Id. at 662.

The Williams court noted that criminal offenses can be divided into three categories. Id. at 663. The first category encompasses "crime[s] against the body of another human being, including (but not limited to) murder, rape, assault, and robbery." Id. The second category involves "crime[s] that inherently pose[] a significant threat of danger, including (but not limited to) drug trafficking and burglary." Id. "An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." Id. The third and "more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." Id. The court stated that "many of these crimes don't make a person dangerous." Id. at 659.

When making a finding regarding dangerousness, courts "must focus on each individual's specific characteristics," and in doing so, "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" "as well as other judicially noticeable information." See id. at 657-660. The Williams court "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness" but left "the question of what information is relevant for another day." Id. at 658 n.12.

**II.     Background**

In 2014, when Defendant was 17 years old, he was convicted of receiving and concealing stolen property in state court. He was initially sentenced to a term of probation

3

under Michigan's Holmes Youthful Trainee Act ("HYTA"). But after he violated the terms of his probation, he received a custodial sentence and his HYTA status was revoked. That year, Defendant was also convicted of misdemeanor domestic violence for which he received a suspended sentence under HYTA.

In 2017, Defendant was convicted of carrying a concealed weapon. Defendant was placed on a delay of sentence, which would have allowed this felony conviction to be reduced to a misdemeanor brandishing charge upon successful completion of probation. But Defendant was charged with violating the terms of his probation. (*See* ECF No. 44-2, sealed.) Thus, the felony conviction was entered, and he was given a custodial sentence.

In 2022, Defendant pled guilty to two separate drug trafficking offenses in West Virginia. He received a prison sentence for both convictions, but the sentences were suspended, pending completion of probation.[2] While on probation, Defendant was charged with domestic violence. (*See* ECF No. 44-4, sealed.) He was convicted at trial of domestic violence, second offense. The charged offense in this case also took place while he was on probation for the drug trafficking cases.

### III.   Analysis

Defendant's facial challenge to § 922(g)(1) is foreclosed by *Williams*.[3] Thus, the Court addresses only his as-applied challenge.

---

[2] Defendant's probation order included a provision prohibiting the possession of a firearm or any dangerous weapon on his person, at his residence, or in his vehicle. (*See* ECF No. 44-3, sealed.)

[3] Defendant takes issue with *Williams* and the dangerousness test it established. Because *Williams* is binding on this Court, there is no need to consider those arguments.

4

Defendant argues that his circumstances do not support a finding of dangerousness. Defendant notes that some of his offenses took place when he was still at a young age and that some were adjudicated under HYTA.

The Court first notes that Defendant has a relatively extensive criminal history. (*See* ECF Nos. 44-1, 44-4, sealed.) Even though he was still young when he committed the first few offenses, several of his convictions were more recent. And apart from the HYTA adjudications, Defendant has two drug trafficking convictions and one misdemeanor domestic violence conviction.[4] The drug trafficking convictions fall within the second category of crimes, which usually "justify a finding of danger." *See Williams*, 113 F.4th at 659 (describing drug trafficking as "a serious offense that, in itself, poses a danger to the community" and "often leads to violence") (internal quotation marks and citations omitted). And misdemeanor domestic violence is not as serious as murder but can be construed as "a crime against the body of another human being." *See id.* at 663. In sum, the Court finds that Defendant has not met his burden of showing that he is not dangerous. Moreover, Defendant was on probation at the time of the underlying offense. *See United States v. Goins*, 118 F.4th 794, 801-02 (6th Cir. 2024) (finding that "our nation's historical tradition of forfeiture laws, which temporarily disarmed convicts while they completed their sentences, also supports disarming those on parole, probation, or supervised release") (citation omitted). This further supports the constitutionality of § 922(g)(1) as applied to Defendant.

---

[4] Defendant argues that the HYTA offenses should not be considered because they did not deprive him of his right to possess a firearm. While this Court has found a HYTA adjudication relevant to the dangerousness analysis in a different case, *see United States v. Gray*, No. 23-20546, 2024 U.S. Dist. LEXIS 223270, at *7 n.4 (E.D. Mich. Dec. 10, 2024), Defendant's remaining convictions are sufficient to resolve this case.

## IV.     Conclusion

For the reasons above, Defendant's motion to dismiss is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 17, 2024