UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMEEL ANTHONY DION TANZIL,

    Defendant.

_____/

Case No. 23-20654

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE [23][36]**

Defendant Jameel Anthony Dion Tanzil is indicted in this matter with one count of felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 14.) Before the Court are Defendant's motions seeking suppression of the evidence seized following the execution of two search warrants. (ECF Nos. 23, 36.) The government opposes both motions. (ECF Nos. 40, 41.) Defendant has filed a reply. (ECF No. 45.) The Court held a hearing on November 18, 2024. For the reasons below, the Court GRANTS Defendant's motions to suppress.

**I.    Background**

    **A.    Overview**

On October 28, 2023, a shooting took place in Pontiac, Michigan, leading to the death of a sixteen-year-old female. Defendant emerged as a person of interest in the homicide. On October 30, 2023, police located Defendant at a home in Pontiac and arrested him. Police found a blue iPhone on the counter in the kitchen of that address,

1

confirmed it belonged to Defendant, and seized it.[1] The following day, police obtained a state warrant to search the phone, and about ten days later, ATF obtained a federal warrant to search the phone along with the hard drive containing the forensic extraction of the phone obtained via the state warrant. Defendant now challenges both warrants.

### B. State Warrant

The affidavit submitted by Oakland County Detective Michael E. Miller in support of the state warrant (ECF No. 23-2) indicated that Defendant was being investigated for felon in possession of a firearm and set forth, in relevant part, the following:

On October 28, 2023, detectives were investigating a homicide that occurred in Pontiac. During the investigation, police recovered two pistols from a nearby residence located at 175 S. Johnson. K.L. was identified as a resident of that home. Defendant is a known associate of K.L. He was identified as a person of interest in the homicide and arrested. A blue iPhone was recovered at the time of the arrest and confirmed to be Defendant's. Defendant waived his *Miranda* rights and spoke with police. He admitted to possessing the recovered firearms while filming a music video in Pontiac on or about October 12, 2023. Defendant said that his phone would clear him of any wrongdoing regarding the homicide. But after he provided the password, he revoked consent to search the phone.

Defendant has been a convicted felon since at least 2022 and is therefore prohibited from possessing firearms. Based on the affiant's training and experience, the

---

[1] Defendant previously challenged the limited search and subsequent seizure of the phone. Following an evidentiary hearing, the Court denied that motion in a written opinion, which summarized relevant details regarding the investigation that led to Defendant's arrest. (ECF No. 34.) This included evidence of GPS ping data showing that the phone was in the area of the shooting at the time and that it was in Defendant's possession at least some of the time between the murder and his arrest. (*See id.*)

2

affiant knew the following: persons prohibited from buying firearms often obtain firearms through straw purchasers or other unlawful means; people involved in illegal firearms trade often post information about the sales on social media, including private messaging; it is common for people who purchase firearms illegally to store records of and communications regarding the acquisition on cellular devices; it is common for people who purchase firearms illegally to take and receive photos of the firearms with a cell phone; people who possess firearms often possess other items related to firearms, such as other firearms and ammunition; and people who illegally purchase firearms frequently have text messages where the parties to the sale describe the firearm the straw purchaser is seeking.

The warrant authorized the search and seizure of the cellular account owner, subscriber, and user information; the equipment identification; all incoming and outgoing cellular calls and text messages; all available recorded GPS locations; all videos and pictures; all incoming and outgoing correspondence; and alternate or previously used contact information.

### C.    Federal Warrant

The application for a federal search warrant submitted by ATF Special Agent Kenton Weston indicated that Defendant was under investigation for felon in possession of a firearm and stolen firearm; aggravated theft; and mail fraud, wire fraud, bank fraud, and conspiracy. The affidavit in support of that application (ECF No. 36-2) set forth, in relevant part, the following:

On October 28, 2023, a sixteen-year-old female was shot and killed in Pontiac. A witness told police that after the shooting, two men left the area in a black SUV that was

3

parked at 175 S. Johnson. Witnesses said that unidentified suspect one frequently drove a black Yukon/Suburban. Police learned that Defendant and that individual were both in a dark SUV that was involved in a traffic accident and assault that occurred approximately one hour before the shooting in the same area. The next day, police searched 175 S. Johnson, where they found unidentified suspect one's minor children and one of Defendant's minor children. There were no adults in the home. Police searched the home and found two firearms. A witness said they observed Defendant shooting a firearm in the direction of the victim and that Defendant had one of the guns that was found.

On October 30, 2023, Defendant was arrested and his cellular phone, an Apple iPhone, was recovered. Police advised Defendant of his *Miranda* rights, and Defendant agreed to talk to the police. He admitted that he was at 175 S. Johnson the night of the homicide. He also admitted handling guns on or about October 12, 2023. He said that the guns belonged to someone else. He also said that the phone would contain evidence that he did not commit the homicide.

During the investigation, police learned that Defendant was suspected of stealing firearms from a co-worker on August 5, 2023. The victim was considering selling guns to Defendant and brought the guns to work. Defendant took a photograph of the guns and sent the photo to a contact on Snapchat. The victim decided not to sell the guns to Defendant after realizing he was on probation. The victim then returned to work. Defendant returned to work about ten to fifteen minutes late. On August 6, the victim noticed that the guns were missing from his car.

On September 10, 2023, there was a shootout at a hookah lounge in Pontiac. Based on witness interviews and video evidence, Defendant was identified as a participant in the shootout. This was also consistent with data collected from a court-ordered GPS tether worn by Defendant.

On October 31, 2023, law enforcement searched Defendant's address pursuant to a provision of Defendant's probation order, which required Defendant to submit to a search of his residence if the probation officer had safety concerns. During the search, law enforcement located a firearm.

Defendant's criminal history includes two 2022 drug trafficking felony convictions. Defendant is prohibited from possessing firearms or ammunition.

Law enforcement learned that Defendant's name, date of birth, and social security number were used to file unemployment claims in seven states between April 30, 2020 and September 13, 2020. Based on training and experience, the affiant found this activity to be consistent with large scale unemployment fraud.

Based on training and experience, the affiant also knew the following: in order for unemployment fraud schemes to work, the perpetrators must use electronic devices, such as computers and phones; people who are prohibited from possessing firearms or ammunition use various forms of communication, including social media messaging applications, to discuss illicit actions; people keep their cell phones with or near their person at all times; and people who possess firearms often take pictures and videos of themselves and others with guns.

The warrant authorized the seizure of "the following things to the extent that they constitute evidence of" the "target offenses:" all incoming and outgoing calls from

5

August 1, 2023 until November 9, 2023; Internet browsing, text messages, statements, and social media posts pertaining to the target offenses; any information related to the identification of other coconspirators; notepad or other files that allow the user to input and store miscellaneous information into the phone; identifying information; all bank and other financial records; and any information regarding the past location of the device. (ECF No. 40-1.)

## II.   Legal Standard

To determine whether probable cause for a search exists, the judge issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "This requires a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quotation marks and citation omitted). "In other words, the affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of property is suspected of crime." *Id.* While the magistrate judge's determination of probable cause is owed "great deference," the reviewing court must "ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 236, 238-39 (quotation marks and citation omitted).

## III.   Analysis

Defendant argues that the underlying searches were not supported by probable cause. More specifically, he argues that the affidavits lacked a nexus between evidence

6

of the suspected criminal activity and the place to be searched. Defendant avers that the affidavits were so inadequate, the good-faith exception does not apply.[2]

The affidavits here did not contain any allegations stating the phone was used during the alleged offenses or that it was used to store evidence of the offenses. The affidavits did not even contain information regarding the GPS ping data showing that the phone was in the area of the shooting for which Defendant was being investigated at the time and in Defendant's possession during the days between the shooting and his arrest. Instead, the government relies primarily on the affiants' statements based on their training and experience about what they generally know to be true regarding people who unlawfully possess firearms and, also, in the case of the federal warrant, those who commit unemployment insurance fraud.[3] An officer's "training and experience" may be considered in determining probable cause, but it is insufficient on its own. *See, e.g.*, *United States v. Ramirez*, 180 F. Supp. 3d 491, 494 (W.D. Ky. 2016) (finding that "[w]ithout any additional detail tying [the defendant]'s arrest to his cell phone, [a] boilerplate statement is insufficient to establish the particularized facts demonstrating fair probability that evidence of a crime will be located on the phone"); *see also United States v. Lavallis*, 515 F. Supp. 3d 686, 693 n.1 (E.D. Mich. 2021) (noting that relying solely on the affiant's statement that he is "aware that those involved

---

[2] Defendant also argues that the warrants were unconstitutionally broad. Because the Court finds that the searches lacked probable cause and are not saved by the *Leon* good-faith exception, there is no need to address the issue of overbreadth.

[3] The government also emphasizes that the state warrant noted that Defendant admittedly possessed firearms while filming a music video. But this fact does not give rise to an inference that Defendant used this particular cell phone during the video shoot. Similarly, while the federal warrant noted that a witness told police that Defendant took a photograph of guns that may have been available for purchase and sent the photo to a contact on Snapchat, there is no indication as to what type of device Defendant used to take the photo.

7

in the unlawful possession of firearms often use cellular telephones to facilitate the acquisition and transfer of firearms" to find probable cause "would be no different than a search incident to an arrest for being a felon in possession of a firearm, which *Riley* [*v. California*, 573 U.S. 373, 398-99 (2014)] does not allow"). And while the affidavits noted that Defendant initially told police that his phone would clear him, a warrant must include facts establishing that the place to be searched will contain "contraband or evidence of a crime," not exonerating evidence. Because the affidavits failed to establish a nexus between the evidence sought and the place to be searched, the searches were not supported by probable cause.

The exclusionary rule does not bar the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). But this good-faith exception does not apply when a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See id.* at 923 (quotation marks and citation omitted). Instead, there must at least be "a minimally sufficient nexus between the illegal activity and the place to be searched even if the information provided was not enough to establish probable cause." *See United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (quotation marks and citation omitted). Here, there was no such nexus. *Cf. United States v. Rolling*, No. 23-1045, 2024 U.S. App. LEXIS 26433, at *10-11 (6th Cir. Oct. 17, 2024) (finding the good-faith exception applicable to the search of a phone where the affidavit "contained factual allegations that [the defendant]'s car and [the defendant] himself had been connected to several robberies committed with another person and that the phone had been found in the car"); *United*

8

States v. Merriweather, 728 F. App'x 498, 506 (6th Cir. 2018) (finding the good-faith exception applicable to the search of a phone where the affidavit alleged that cell phones were used to facilitate two drug buys from the defendant and that the cell phone at issue was found in a vehicle containing "the very drugs involved in the conspiracy"). Because an objectively reasonable law enforcement officer would have recognized this deficiency, the good-faith exception is inapplicable.

**IV.　Conclusion**

For the reasons above, Defendant's motions to suppress are GRANTED. All evidence seized pursuant to the challenged search warrants is suppressed.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: January 2, 2025